**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Judge Christine M. Arguello**

Civil Action No. 10-cv–2899-CMA-MEH

AMERICAN ACADEMY OF
HUSBAND-COACHED CHILDBIRTH, a California general partnership,

      Plaintiff,

v.

KYLE THOMAS, an Individual;
NAOMI THOMAS, an Individual;
ELLEN CONTARD, an Individual; and
BRIO BIRTH, LLC, a Colorado limited liability company,

      Defendants.

---

## ORDER GRANTING PRELIMINARY INJUNCTION

---

      This matter is before the Court pursuant to the Plaintiff's Motion for Preliminary Injunction (Doc. # 2).  The Court heard argument and received testimony on the motion on December 10, 2010.  All parties and their counsel were in attendance at that hearing. The Court has reviewed all related briefs submitted by the parties.

      The Court finds that Plaintiff has met its burden of establishing a need for a preliminary injunction.  Therefore, Plaintiff's Motion for Preliminary Injunction is GRANTED.

      The requested injunction will not alter the status quo.  The last peaceable uncontested status that existed between the parties was prior to Defendants taking their actions with respect to Bradley Reborn.

This is not a mandatory injunction.  Although the Court is requiring Defendants to take certain actions, the Court is not preventing them from conducting a childbirth education business.  The Court is enjoining them from using the Bradley name, from interfering with Plaintiff's current and prospective business relationships, and from competing unfairly with Plaintiff.

This injunction does not grant Plaintiff all the relief to which it would be entitled after trial in this matter.  Plaintiff seeks monetary damages in addition to injunctive relief.

Therefore, this is not a disfavored injunction and the Court will not apply the heightened standard.

A preliminary injunction is extraordinary relief.  A party seeking a preliminary injunction must show 1) a substantial likelihood that the movant eventually will prevail on the merits; 2) that the movant will suffer irreparable injury unless the injunction issues; 3) that the threatened injury to the movant outweighs whatever damage the proposed injunction may cause the opposing party; and 4) that the injunction, if issued, would not be adverse to the public interest.  *Lundgrin v. Claytor*, 619 F.2d 61, 63 (10th Cir. 1980).

On balance, the record in this case demonstrates that these factors weigh heavily in favor of injunctive relief in the form of a preliminary injunction.

## I.  SUBSTANTIAL LIKELIHOOD OF SUCCESS

Plaintiff has asserted eight claims for relief, seven of which are relevant to this Order.  Plaintiff has demonstrated a substantial likelihood of success on the merits of these seven claims.  I will group these seven claims into four categories.

2

**A.   TRADEMARK INFRINGEMENT**

Plaintiff has stated four claims relating to trademark infringement.  Plaintiff's

First Claim for Relief is Infringement of a Federally Registered Trademark, pursuant

to 15 U.S.C. § 1114.  The Second Claim for Relief sounds under Common Law

Trademark Infringement.  Plaintiff's Fourth Claim seeks relief under 15 U.S.C. § 1125(a)

for false representation.  The Sixth Claim for Relief is based on the common law tort of

Unfair Competition.

Plaintiff has demonstrated a substantial likelihood of success on the merits of

these claims.  The common-law torts of trademark infringement and unfair competition

are analogous to statutory claims under Title 15, which seek to prevent confusion

between parties' products.  *Donchez v. Coors Brewing Co.*, 392 F.3d 1211, 1219

(10th Cir. 2004).  To prevail under any of these theories, plaintiff must prove three

elements: 1) it owns a valid, protectable mark; 2) defendant used a mark in commerce,

and 3) defendant's mark is so similar to plaintiff's that it is likely to cause consumer

confusion.  *Id.*

Plaintiff owns a valid, protectable mark.  It owns the federal registration for THE

BRADLEY METHOD and owns valid common law trademark rights in the BRADLEY

name by virtue of its adoption and continuous use in commerce since 1971.  The Court

will refer to "THE BRADLEY METHOD" and "BRADLEY" collectively as "the BRADLEY

Marks."  The BRADLEY Marks have become firmly established in the minds of

customers and potential customers as distinctly identifying Plaintiff's childbirth training

and education services, and this occurred long before Defendants announced that it would offer Bradley Method training under BRADLEY REBORN in November 2010. Defendants implicitly acknowledged that Plaintiff's marks are valid and protectable by their offer to purchase or license them.  In view of Plaintiff's ownership of a registered mark, THE BRADLEY METHOD, there is a statutory presumption of protectability, which presumption Defendants have not rebutted.  Nor have the Defendants shown that the BRADLEY Marks are generic.

Defendants have used Plaintiff's mark in commerce.  Defendants have registered the domain names www.bradleyreborn.com and www.bradleyreborn.net.  Under the name "Bradley Reborn," they operate a Facebook site and a Twitter page. Defendants use of Plaintiff's marks is likely to cause confusion.  "Confusion occurs when consumers make an incorrect mental association between the involved commercial products or their producers." *Packerware Corp. v. Corning Consumer Products Co.*, 895 F. Supp. 1438, 1448 (D. Kan. 1995).  Likelihood of confusion is "considered not only in the context of confusion of source, but also in the context of confusion that results from a mistaken belief in common sponsorship or affiliation." *Id.*, citing *Amoco Oil Co. v. Rainbow Snow*, 748 F.2d at 558.

In determining Plaintiff's probable success in showing the likelihood of confusion, the Court may consider several nonexhaustive factors including the degree of similarity, the strength of plaintiff's marks, the degree to which the services compete with each other, defendants' intent, and incidents of actual confusion.  *See, e.g., Packerware*

4

*Corp.,* 895 F. Supp. at 1448, citing *Beer Nuts, Inc. v. Clover Club Foods Co.*, 805 F.2d 920, 925 (10th Cir. 1986) (*Beer Nuts II*).

The Court finds a high degree of similarity between Plaintiff's and Defendants' marks.  Moreover, Defendants have submitted trademark applications with the USPTO and the services identified with the applications are identical to the services identified by Plaintiff in its trademark registration for THE BRADLEY METHOD.

Plaintiff has spent nearly forty years promoting The Bradley Method throughout the United States and world and, as a result of its efforts, has conferred considerable strength on the BRADLEY Marks.

Defendants are offering services that compete directly with Plaintiff.  According to defendants' "Educator Contract," Bradley Reborn "trains, certifies, and supports childbirth educators who teach Bradley childbirth classes."

An inference of intent arises where defendants, with knowledge of a competitor's marks, choose a similar mark from an infinite number of possibilities.  *Empi, Inc. v. Iomed, Inc.*, 923 F. Supp. 1159, 1167 (D. Minn. 1996). Courts have also found that wrongful intent can be inferred when a defendant knows of the plaintiff's mark, had the ability to choose any mark, and "happens" to choose a confusingly similar mark for marketing his similar goods or services.  *Beer Nuts II*, 805 F.2d at 927.  "One who adopts a mark similar to another already established in the marketplace does so at his peril, because the court presumes that he can accomplish his purpose: that is, that

the public will be deceived. All doubts must be resolved against him." *Medi-Flex, Inc. v. Nice-Pak Prods.*, 422 F. Supp. 2d 1242, 1250 (D. Kan. 2006).

Defendants were well aware of the Plaintiff's BRADLEY and THE BRADLEY METHOD marks.  Indeed, Defendant Naomi Thomas is certified by Plaintiff as a Bradley Method teacher. Furthermore, Defendants sought to purchase the BRADLEY marks from American Academy.

With respect to incidents of actual confusion, Plaintiff has presented evidence of instances of actual confusion.

Accordingly, the Court finds that Plaintiff is likely to succeed on its claims of Infringement of a Federally Registered Trademark, Common Law Trademark Infringement, false representation under 15 U.S.C. § 1125(a), and Unfair Competition

**B.    TRADEMARK DILUTION**

The Federal Dilution Act entitles the owner of a famous and distinctive trademark to injunctive relief against anyone who uses "a mark or trade name in commerce that is likely to cause dilution by blurring or dilution by tarnishment of the famous mark, regardless of the presence or absence of actual or likely confusion, of competition, or of actual economic injury."  15 U.S.C. § 1125(c).  The owner must show that 1) it owns a "famous" mark; 2) the mark was famous before defendants began their use; and 3) defendants' use has or will cause "dilution."  *King of the Mt. Sports, Inc. v. Chrysler Corp.*, 968 F. Supp. 568, 577 (D. Colo. 1997), aff'd, 185 F.3d 1084 (10th Cir. 1999).

Dilution means use of defendant's trademark will likely "blur" or "tarnish" the plaintiff's mark. *Clinique Lab v. Dep. Corp.*, 945 F. Supp. 547, 567 (S.D.N.Y. 1996) (Section 43(c) protects famous trademarks from subsequent uses that blur the distinctiveness of the mark or tarnish or disparage it.). The Lanham Act defines "dilution by tarnishment" as an "association arising from the similarity between a mark or trade name and a famous mark that harms the reputation of the famous mark." 15 U.S.C. (c)(2)(b). The Act lists six factors relevant to likelihood of dilution:

(i)     the degree of similarity between the mark or trade name and the famous mark;

(ii)    the degree of inherent or acquired distinctiveness of the famous mark;

(iii)   the extent to which the owner of the famous mark is engaging in substantially exclusive use of the mark;

(iv)    the degree of recognition of the famous mark;

(v)     whether the user of the mark or trade name intended to create an association with the famous mark;

(vi)    any actual association between the mark or trade name and the famous mark;

*Id.*

Here, Defendants tried to purchase the Plaintiffs interests in the BRADLEY Marks because it had acquired a highly recognizable, famous, exclusive, and distinctive name and reputation in the area of child-birth education. Among the thousands of possible names Defendants could have used for their business, they chose "Bradley Reborn" because it was unmistakably similar to Plaintiff's famous mark and would

7

devalue Plaintiff's brand.  The public's actual association between Defendants' mark

and Plaintiff's famous mark is clear from the fact that this fledgling company that was

unknown just a few weeks ago now reports that its "Bradley Reborn" website has

already surpassed 135,000 pageviews on its website bradleyreborn.com.

Accordingly, the Court finds that Plaintiff is likely succeed on its claim of

Trademark Dilution.

**C.     FEDERAL CYBERSQUATTING**

Plaintiff is likely to succeed on the merits of its claim under the Anti-

Cybersquatting Protection Act (the "ACPA"). 15 U.S.C. 1125(d) makes "it illegal for

a person to register or to use with the bad faith intent to profit from an Internet domain

name that is identical or confusingly similar to the distinctive or famous trademark or

Internet domain name of another person or company."  *Shields v. Zuccarini*, 254 F.3d

476, 481 (3d Cir. 2001) (citation and quotations omitted). "The Act was intended to

prevent cybersquatting, an expression that has come to mean the bad faith, abusive

registration and use of the distinctive trademarks of others as Internet domain names,

with the intent to profit from the goodwill associated with those trademarks."  *Id.*

That Act provides, in pertinent part:

[A] person shall be liable in a civil action by the owner of a mark . . .
if, without regard to the goods or services of the parties, that person –

(i)      has a bad faith intent to profit from that mark . . . ; and

8

(ii)     registers, traffics in, or uses a domain name that –

(I)   in the case of a mark that is distinctive at the time of the registration of the domain name, is identical or confusingly similar to that mark; [or]

(II)   in the case of a famous mark that is famous at the time of registration of the domain name, is identical or confusingly similar to or dilutive of that mark; . . . .

15 U.S.C. § 1125(d)(1)(A).

Thus, Defendants are liable under the ACPA if they willfully seek to profit by registering or using a domain name that is identical or confusingly similar to a distinctive or famous mark, or that is dilutive of a famous mark.

The Bradley Marks are distinctive and famous.  Defendants' newly minted mark "Bradley Reborn" is identical or confusingly similar to, and dilutive of, Plaintiff's mark and is embedded in Defendants' domain names, www.bradleyreborn.com and www.bradleyreborn.net.   Bad faith is shown by Defendants stated objective to take the Bradley name away from the Plaintiff and by the fact that Defendants registered their infringing domain names at approximately the same time they were threatening to destroy Plaintiff if their buyout demand was refused.  Defendants' use of their website to charge fees and Defendants' intended use to raise advertising revenue also shows their intention to profit from the mark.

Defendants' domain names capitalize on the BRADLEY Marks and divert internet traffic to Defendants' own website where they wrongfully advertise a continuation of The Bradley Method.  Defendants claim on their website that The Bradley Method is part of

their services. Such an effort to capitalize from the American Academy's BRADLEY

Marks is exactly the type of unfair competition that the Anti-Cybersquatting Act is

designed to prohibit. Plaintiff has demonstrated a likelihood of success on its

cybersquatting claim.

## D.   INTENTIONAL INTERFERENCE WITH EXISTING AND PROSPECTIVE BUSINESS ADVANTAGE

Colorado recognizes the claim of interference with contracts.  *Trimble v. City and

County of Denver*, 697 P.2d 716 (Colo. 1985).  To prove a claim for interference with

contract, it must be shown that the defendant knew of the contract or had knowledge

of facts that reasonably should have caused the Defendant to know of the contract.

*Bithell v. Western Care Corp.*, 762 P.2d 708 (Colo. App. 1988).  Defendant's conduct

which caused the breach of contract must be intentional and improper.  *Amoco Oil Co.

v. Irvin*, 908 P.2d 493 (Colo. 1995).

The tort of interference with prospective business advantage has also been

recognized as actionable in Colorado.  *Memorial Gardens, Inc. v. Olympia Sales and

Management Consultants, Inc.*, 690 P.2d 207 (Colo. 1984); *Dolton v. Capital Federal

Savings and Loan Assn.*, 642 P.2d 21, 23 (Colo. App. 1981).  Colorado adopted the

elements of the claim, citing Restatement (Second) of Torts, § 766(b) at 20, 1997, as

follows:  Inducing or otherwise causing a third person not to enter into or continue the

prospective relation or preventing the other from acquiring or continuing the prospective

relation.  *See also, Montgomery Ward Co. v. Andrews*, 736 P.2d 40, 47 (Colo. App.

1987).

In determining whether a defendant's interference is intentional and improper, the Court must consider several factors, including the defendant's motivation, the nature of the defendant's conduct, the interest of the other with whom the defendant's conduct interferes, the interest sought to be advanced by the defendant, and the proximity or remoteness of the defendant's conduct to the interference. *Memorial Gardens v. Olympia Sales and Management Consultants, Inc.*, 690 P.2d 207, 210 (Colo. App. 1984); *Cronk v. Intermountain Rural Electric Assn.*, 765 P.2d 619, 623 (Colo. App. 1988).

Here, the intentional and improper actions of Defendants constitute interference with the existing contracts which American Academy has with its nationwide certified instructors in The Bradley Method, as well as the prospective relation which American Academy has with each of its prospective instructors.  Accordingly, Plaintiff is likely to succeed on the merits of intentional interference with contracts claim.

## II.  IRREPARABLE HARM

Defendants' continued unauthorized use of Plaintiffs' trademarks will harm Plaintiff's reputation and will compromise the goodwill that Plaintiff has worked for forty years to create.  Defendants use of the BRADLEY Marks is likely to cause, and has caused, consumer confusion and deception as to the source of the Plaintiff's and Defendants' services.  There is difficulty in calculating damages in this case.  Without issuance of this injunction, Plaintiff will incur a loss of the certified teachers in existing

11

contractual relationship with Plaintiff and a loss of those in prospective relationships with Plaintiff.

## III. BALANCE OF HARMS

Defendants will be harmed by the issuance of this injunction. However, they brought this situation on themselves by setting up Bradley Reborn websites and doing business under that name after unsuccessfully soliciting Plaintiff's marks and without first seeking a declaratory judgment in this Court. Moreover, the injury to Plaintiff vastly outweighs whatever damages the proposed injunction may cause to Defendants. Plaintiff will suffer significant harm to the goodwill and reputation of the BRADLEY marks, which have become distinctive and famous through nearly forty years of use, advertisement and promotion.

## IV. PUBLIC INTEREST

The Court finds that the public interest will not be harmed by the issuance of this injunction.

## IV. ORDERS

It is, therefore, ORDERED that:

Defendants, their officers, agents, employees, successors, attorneys and all those in active concert or participation with them, are RESTRAINED and ENJOINED, or otherwise ordered to comply as enumerated below, under Fed. R. Civ. P. 65, pending further order of court, as follows:

12

a.      From using in any manner BRADLEY or THE BRADLEY METHOD, or any other designation that is confusingly similar to BRADLEY or THE BRADLEY METHOD or any of the BRADLEY or THE BRADLEY METHOD marks, including but not limited to, BRADLEY REBORN or BRADLEY BIRTH, as to be likely to cause confusion, deception or mistake on or in connection with advertising, marketing, or use of any service or goods not Plaintiff's or not authorized by Plaintiff to be used in connection with BRADLEY or THE BRADLEY METHOD or as is likely to dilute the BRADLEY or THE BRADLEY METHOD trademarks;

b.      From passing off, inducing or enabling others to sell or pass off, any product or service offered by Plaintiff, not Plaintiff's or not produced under the control and supervision of Plaintiff and approved by Plaintiff;

c.      From committing any acts calculated to cause consumers to believe that BRADLEY REBORN or any other infringing marks used by Defendants are sponsored or approved by, or connected with, or guaranteed by, or produced under the control and supervision of Plaintiff;

d.      From further diluting and infringing the BRADLEY or THE BRADLEY METHOD trademarks and damaging Plaintiff's goodwill;

e.      From further tortiously interfering with Plaintiff's contracts or prospective business advantage;

f.      From otherwise competing unfairly with Plaintiff in any manner;

13

g.       From conspiring with, aiding, assisting, or abetting any other person or

business entity in engaging in or performing any of the activities referred to above; and

h.       From operating or assisting in the use of, or facilitating in any manner the

use of the domain names www.bradleyreborn.com and www.bradleyreborn.net, for any

purpose, including in any connection with the sending or receiving of email, redirection

services, or the hosting of a website.

It is further ORDERED that this Preliminary Injunction is effective beginning at

5:00 PM on December 10, 2010.

It is further ORDERED, pursuant to Fed. R. Civ. P. 65(c), that bond is set in the

amount of $50,000.00 (fifty thousand dollars) as security, which bond may be posted in

the form of collateral or through use of a bonding company.

DATED:  December   15  , 2010

BY THE COURT:

_____
CHRISTINE M. ARGUELLO
United States District Judge