**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO**

Civil Action No. 10-cv-02899-CMA-MEH

AMERICAN ACADEMY OF HUSBAND COACHED CHILDBIRTH, a California general partnership,

                    Plaintiff

v.

KYLE THOMAS, an individual;
NAOMI THOMAS, an individual;
ELLEN CONTARD, an individual; and
BRIO BIRTH, LLC, a Colorado limited liability company,

                    Defendants.

---

**DEFENDANTS' FIRST AMENDED ANSWER AND COUNTERCLAIMS TO
THE VERIFIED COMPLAINT**

---

Defendants Kyle Thomas, Naomi Thomas, Ellen Contard, and Brio Birth, LLC, by and through

undersigned counsel hereby answer the complaint of American Academy of Husband-Coached

Childbirth ("AAHCC") as follows:

1.  Defendants deny the allegations of paragraph 1.  This case arises out of the abuse and

misuse of trademarks by the owners of a forty-year old company for the purpose of restraining

the fair trade of the first legitimate, large-scale competition they have ever faced.

2.  Defendants deny the allegations of paragraph 2.  Brio Birth, LLC was founded to provide an

alternative certifying organization for childbirth educators who wanted to teach based on the

philosophies of Dr. Robert Bradley, a famous obstetrician whose work is published and widely

distributed.  Until now, the American Academy of Husband-Coached Childbirth (AAHCC) has been the only organization that certifies teachers in a curriculum based on these philosophies - not due to a patent or exclusive rights, but simply due to lack of large-scale competition.  For many years, there has been dissatisfaction among teachers regarding the AAHCC's policies, operations, and materials.  The AAHCC trains nearly 200 teachers per year, and they claim that they currently have "over 900 instructors" (Plaintiff's verified complaint, paragraph 14) - a rate of attrition that impeded growth or even reduced the teacher membership long before Brio Birth came into existence.  Brio Birth, LLC, d/b/a Bradley Reborn, has created its own distinctive intellectual property based on the work of Dr. Bradley and other experts (appropriately cited), and it does have the support of Dr. Bradley's estate in this endeavor (Exhibit A).  Instructors have chosen to switch affiliations, not because Brio Birth is claiming ownership of AAHCC's intellectual property, but because Brio Birth offers superior intellectual property products and support services.

3.  Defendants deny the allegations of paragraph 3 in that statements are taken out of context and improperly characterized; further, Defendant Kyle Thomas cannot admit or deny the exact words that were used in a conversation because he does not have recollection as to the exact words used, and did not consent to any recording of the conversation.  Kyle Thomas' tone could much more readily be described as "pleading" than "raging" - he did not want the negative events mentioned to happen.

4.  Defendants deny the allegations of paragraph 4, except that Defendants are without sufficient knowledge as to the nature of "all instructors' contracts".  The AAHCC's own actions are causing their instructors to leave.  Their restraint of their instructors' trade and their treatment of instructors who approach them with questions and concerns, in particular, are

creating dissatisfaction sufficient to cause significant attrition.  Prior to the existence of Bradley

Reborn, many instructors had already shared their intentions not to renew, their indecision, or

the fact that the only reason that they continued to affiliate with the AAHCC was DR. Bradley's

philosophy (Exhibits B and C).

5.  As to paragraph 5, Defendants are without sufficient knowledge to admit or deny the

corporate structure of AAHCC.

6.  Defendants admit the allegations of paragraph 6, except that the reference to a "resume" is

unclear as to what exact document is referred to, and therefore cannot admit or deny what items

were listed on the "resume".  Kyle Thomas first became familiar with the term Bradley in relation

to childbirth while living in Los Angeles in 2001. Mr. Thomas became increasingly familiar with

The Bradley Method while courting Naomi.  Her passion and his own acquaintance with out-of-

hospital birth in the Philippine Islands helped fuel his own passion about birth, which was only

amplified with the birth of Kyle and Naomi's son in July 2010.

7.  Defendants deny the allegations of paragraph 7 except that the address is correct, and

Naomi Thomas did become an AAHCC instructor in 2005.  Naomi Thomas was educated with

Dr. Bradley's philosophies by an instructor not affiliated with the AAHCC, and practiced those

philosophies in the birth of her first child.  Naomi Thomas admits to marrying her husband Kyle

Thomas and giving birth to her second child.  Naomi Thomas is the VP of Social Networking for

Brio Birth, LLC.  Wayne Carroll is an intellectual property attorney, and a brother to Naomi

Thomas.   Naomi Thomas has worked as a doula in several Denver area hospitals.  No hospital

has ever revoked privileges from her (primarily because hospitals do not grant privileges to

doulas), nor has any hospital ever officially expressed any level of dissatisfaction with her

actions or asked her to leave (Exhibit D).

8.  Defendants admit the allegations of paragraph 8, except that the address of Ellen Contard is 3588 S. Joplin St, Aurora, CO 80013.

9.  Defendants admit the allegations of paragraph 9.

10.  Defendants admit the allegations of paragraph 10.

11.  Defendants admit the allegations of paragraph 11.

12.  Defendants are without personal knowledge of the allegations of paragraph 12 and therefore cannot admit or deny the allegations.

13.  Defendants are without personal knowledge of the allegations of paragraph 13 and therefore cannot admit or deny the allegations.

14.  Defendants are without personal knowledge of the allegations of paragraph 14 and therefore cannot admit or deny the allegations.  Regarding the AAHCC training, many teacher candidates first became concerned about the AAHCC at their teacher trainings, which they have stated did not meet their expectations.  The research referenced and provided at the trainings was incomplete, dated, and often from mainstream media sources rather than medical journals and academic sources (Exhibit E); there was very little information on how to teach a class; the materials were not professionally designed and not always effective for their intent (Exhibit F), and few were truly provided (they had to be purchased from the AAHCC or other sources); the business and marketing advice was minimal and ineffective; the presentation of birth topics was hostile and unprofessional, and has been described by many teachers as "ranting" (Exhibits B and C).   Even though, the investment made for the training was large (in 2005, training tuition cost $995; in 2010, training tuition cost $1295 - and these costs do not include travel and accommodations), the teachers' passion to teach was strong, so they persevered as educators

with the AAHCC.  The teachers' difficulties did not end with the training, as the training leaves

teachers unprepared to teach.  Further, new instructors are subject to a "provisional" period

where onerous restrictions are placed on their ability to market themselves or receive marketing

aid from others; they are listed on a secondary page in the online directory, making their listings

generally difficult to find; they are restricted in the use of any but the materials provided by or

purchased from the AAHCC.  While most instructors are able to complete their provisional

period and obtain full affiliation in a matter of months, some instructors remain provisional for a

much longer period of time. Even upon full affiliation, teachers are placed in a liminal space

where marketing is extremely difficult.  Teachers with full affiliation are subject to many

restrictions (though not as many as provisional instructors), including: using AAHCC-produced

or AAHCC-approved materials, where the approval process is seemingly arbitrary and can take

many months when it is completed at all; limitations on online presence; prohibition from

advertising other philosophically aligned services (such as doula work, lactation education,

parenting education, etc) or credentials, including medical and academic credentials.  At the

same time, the AAHCC does not market for students to support its teachers, nor does it offer

professional public relations support, response to relevant media stories, etc.  The minimal

marketing efforts put out by the AAHCC focus almost completely on recruiting teachers.  Even

that is limited to niche communities, and the AAHCC relies heavily on its current teachers to

refer new teachers. Teachers are bound by the AAHCC's "Statement of Policy/Contract"

(Plaintiff's verified complaint, Exhibit 9) to the above restrictions, as well as required to submit

students' personal information – including name, contact information, care provider, birth place,

child's name, birth date, and some details about the birth, as a condition of their affiliation as

teachers (see Exhibit G, pp. 7-9).  The AAHCC claims to support its teachers and to be open to

feedback and suggestions.  However, a significant number of teachers have reported negative

experiences when they approached the AAHCC with questions or concerns, individually or as a small group.  Some even had their affiliations suspended or revoked as a result.  Many other teachers reported having their concerns simply ignored.  Teachers offering suggestions on the teacher forums, even though most receive a positive response from fellow teachers, have overwhelmingly reported a negative response or no response from the AAHCC.  A large portion of the teaching population sustains their practice by simply breaking the AAHCC's rules regarding advertising their own and others' childbirth classes as well as breaking the rule regarding advertising other credentials, series length, and various other topics, thereby "flying under the radar."  Many teachers who are able to do so form local relationships or support groups and limit their contact with the AAHCC.  A simple internet search reveals a very large number of provisionally or fully affiliated teachers whose web presences alone are flagrantly violating one or more points of the AAHCC "Statement of Policy/Contract" (Exhibit BH, BJ, CC, CJ, CK), as well as many formerly- or never-affiliated teachers claiming to teach Bradley classes or classes that are based on or incorporate Bradley principles.   However, none of these issues are addressed by the AAHCC, which focuses on training as many new teachers as possible, enforcing the rule that every teacher buy at least ten workbooks per year, and cracking down on affiliated teachers who approach them with questions or concerns that are not simply ignored.  Most teachers learn very quickly to pay their dues, buy their workbooks (in quantities of 5 or more for the $8/book discount), keep their heads down, and break rules as they feel the need.  Due to the lack of standardization of classes, the low quality and dated look of the materials, the hostility toward the medical community into which instructors are indoctrinated or entrenched at the teacher training workshop, and the often out-of-date research offered as resources, the reputations of Bradley classes, Bradley teachers, and Bradley students have

been deteriorating for years in the medical profession and much of the birth community.   There are certainly instances of individual teachers having excellent relationships with their own local communities – cross-referring with individual care providers, gaining the respect of birth places, etc – but this tends to happen despite the AAHCC, not because of it.  The Bradley community as a whole is often seen as fringe, hostile, and dated.

15.  Defendants are without personal knowledge of the allegations of paragraph 15 and therefore cannot admit or deny the allegations, except that according to the letter, Dr. Bradley was not stating an affirmative wish that the AAHCC, and only the AAHCC, use his name and teach his philosophies.  The AAHCC was seeking a service mark for the phrase "THE BRADLEY METHOD," and Dr. Bradley's consent was required for the use of his name since he was a living person.

16.  Defendants are without personal knowledge of the allegations of paragraph 16 and therefore cannot admit or deny the allegations.

17.  Defendants deny the allegations of paragraph 17, except that Defendants are without personal knowledge of specific use, specific dates of use, and the extent of the use of terms in connection with educational services and therefore cannot admit or deny those allegations.  The AAHCC has misrepresented ownership of the registered trademark BRADLEY(R) (Exhibits F, Q, Plaintiff's verified complaint, Exhibit 2).  They have put a registered trademark symbol after the standalone word "Bradley" for many years, and required their instructors to do the same. They would pass this off as a simple misunderstanding and lack of sophistication in business practices, but they have a long-established relationship with an attorney who purportedly assists them with trademark issues, as testified at the hearing for preliminary injunction, 10 Dec 2010.

It was not until the existence of Brio Birth and the heightened awareness that the AAHCC did not own BRADLEY(R) - raised by laypeople, not lawyers or intellectual property experts - that the AAHCC suddenly removed the registered trademark symbol from every location they could find.  They did not, however, make sufficient efforts to publicize this mistake to their affiliated instructors and require that the instructors do the same; there are still numerous personal websites maintained by affiliated instructors that contain instances of BRADLEY(R).  Intent does not negate the misrepresentation of a trademark, and misrepresentation of a registered trademark does not secure common law rights.

18.  Defendants are without personal knowledge of the allegations of paragraph 18 and therefore cannot admit or deny the allegations, except that the AAHCC re-filed for the trademark on "THE BRADLEY METHOD" in 2001 using the same letter as one of the bases for its filing (Plaintiff's verified complaint, Exhibit 1).  However, Dr. Robert Bradley died on 25 December 1998.  In filing "from the beginning," as the AAHCC acknowledged they had to do (Plaintiff's verified complaint, Exhibit 1), they should have sought the consent of Dr. Bradley's estate, due to the fact that he was now a deceased famous person.  Instead, they used the original letter from 1976, failing to notify the estate.

19.  Defendants are without personal knowledge of the allegations of paragraph 19 and therefore cannot admit or deny the allegations, except that defendants admit that AAHCC appears to operate a website at the domain www.bradleybirth.com.

20.  Defendants deny the allegations of paragraph 20 in that statements are taken out of context and improperly characterized so that the true meaning is not clear.  In late August, 2010, Ellen heard from a fellow local birth worker that the Childbirth and Postpartum Professional Association (CAPPA), a national organization that certifies many types of birth professionals

including antepartum, labor, and postpartum doulas, childbirth educators, and lactation educators, was no longer going to be accepting Bradley classes for the audits required for their doula program.  Concerned, Ellen e-mailed the CAPPA office and inquired as to the truth of and reason for this statement.  She received a reply from a CAPPA executive (Exhibit H) – who was, coincidentally, a local colleague – stating that the decision had been made because

 "**organizations vary wildly in their application of evidence-based information, and we've had numerous situations in which the information taught was outdated, and the tone and philosophy of the classes were negative and antagonistic about hospital birth (which we feel is incredibly bad for parents - if they see themselves as going into battle, they should be birthing somewhere else).**"  Citing the lack of "standard" Bradley classes known to the birth community, the CAPPA executive also stated: "**We know there are many Bradley instructors who have kept current, changed their curriculum to reflect research, and who teach in a way that does not perpetuate the embattled attitude that I just described.  But the organization still teaches the same things that they taught decades ago, and we can't endorse that overall.**"  She ended her note with a statement of professional respect for Ellen: "**On a more local note, I know that you teach a solid, evidence-based, comprehensive class that leaves parents feeling empowered and excited about their upcoming births, and I will continue to recommend your classes to expectant parents.**"

 With this confirmation and further information, Ellen quickly notified her local Bradley community via e-mail, the international Bradley community via the AAHCC teacher forums, and the AAHCC via e-mail.  Approximately six days after her e-mail to the AAHCC, Ellen received an e-mail purportedly from Marjie Hathaway (Exhibit I) that showed both ignorance of CAPPA and a general lack of concern: "**It is not a surprise that CAPPA does not accept Bradley(r)**

**training for their program. It would be mixing causes if they did. We train instructors who train couples in the natural process of birthing.  Mom as a birthing athlete and Dad as an amazing coach/doula.**"  Ellen replied, emphasizing the urgent nature of the situation: "**The fact is, this is a PR crisis that has been apparent in some localities for years, but with the CAPPA decision has now reached a much more broadly recognized, national level… Staying in an ivory tower and continuing to snub the rest of the birth world is not going to be impressive - it will make us appear irrelevant and squeeze our instructors out of the opportunity to provide excellent education and truly make a difference…  I sincerely hope that the Academy will recognize the need, and will take advantage of the broad and deep pool of resources it has in its instructors to improve our educational materials, our presentation, and consequently our relevance to birth in this country and beyond.**"

No reply was ever sent to that e-mail.  After hearing of the CAPPA decision and the subsequent communications between Ellen and Marjie, Naomi's already existing concerns about the AAHCC came to a head.  She called Ellen and another local AAHCC-affiliated teacher, Melissa Evans.  The three of them, along with Kyle, agreed to meet on September 15th to discuss their concerns and what action they might be able to take to help remedy the situation.  At that meeting, they discussed the concerns and frustrations of their approximately 17 person-years of experience with the AAHCC.  They had all seen difficult situations – and heard from colleagues of even worse situations – where instructors were ignored, shamed, belittled, even deprived of their affiliation for questioning the AAHCC's way of running things.  They decided that if they were going to be able to make a difference, they needed strength in numbers.  They felt that their first step should be to survey teachers and see how many others had the same concerns they did.  They decided that it would also be a great idea to contact as many former teachers as

they could, in order to get a better understanding of why teachers were leaving at such an alarming rate.

21. Defendants deny the allegations of paragraph 21. What the AAHCC refers to as a "pyramid scheme" is nothing more than a common-sense organizational chart - teachers will be better supported if they have a regional leadership structure in place. AAHCC instructors have been asking the AAHCC to delegate some of its support and operations functions to regional leadership for years. In fact, the AAHCC business model is much closer to a pyramid scheme - sign up as many new teachers as possible to fund what appears to be their primary revenue stream; require that teachers buy a workbook for every student to fund what appears to be their secondary revenue stream; teachers pay annual dues to fund their third revenue stream; use teachers to recruit their students as new teachers, and if a teacher refers a student who becomes a teacher, they receive an incentive ($50 credit for the AAHCC store where they can supply the AAHCC with more revenue). Meanwhile, they do not re-invest that revenue to improve their materials or programs or to support their teachers in marketing - the limited marketing that they do is focused on recruiting more teachers, and not on finding future students. Even when teachers leave out of dissatisfaction, they have already funded the AAHCC's primary revenue stream and generally committed a fair amount of funds to the secondary revenue stream. The AAHCC appears to make almost all of its money off of its teachers, many of whom do not profit from their own teaching business. The AAHCC's intellectual property is outdated and embarrassing to the teachers who are required to use it. The AAHCC does not have nearly the good will that they claim. In addition to the above referenced situation with CAPPA, they are often disdained in the birth community as a whole and in the medical community. In carrying on the Bradley name, Brio Birth, LLC d/b/a Bradley Reborn knew that it was taking on a tarnished image and would have public relations clean-up

to accomplish.  The founders - and those who joined them - were willing to do that because of their passion for the philosophy, their emotional attachment to the education that enabled them to have their own positive birth experiences, and their desire to carry Dr. Bradley's legacy and his work forward into the 21st century and reach many, many more mothers and babies.

22.  Defendants deny the allegations of paragraph 22, except that defendants admit that a survey was sent to instructors on or about September 18, 2010, and that over 300 teachers responded to the survey within the first seven days.  The first step was to solicit input from current and former AAHCC affiliates in order to develop the most effective and comprehensive survey possible.  To this end, the group carefully assembled an e-mail list of current and former teachers based on years of networking and newly performed online searches.  They then sent out an e-mail soliciting the teachers' top five concerns about the AAHCC.  The response (Exhibit B) was overwhelming, telling – and upsetting.  Stories came flooding in about frustrations, ignored requests, chafing under restrictions, fears about the lack of adequate succession planning with the reality of Marjie and Jay aging and not appearing to be in good health, teachers who had quit, were planning to quit, or were thinking about quitting but struggling with the magnitude of the investment they would lose by leaving the AAHCC.  Based on this input, the team – led in this effort by an affiliated couple with very sound academic credentials and methodology – assembled a 91-question survey to assess the positive and negative aspects of Dr. Bradley's principles, the management of the AAHCC, the perceptions of the community, the concerns of current and former teachers, and the issues that impacted retention.  The goal was to take the results of the survey to the AAHCC, accompanied by proposals for a solution and an offer of assistance.  As the survey was developed, completed, and analyzed, there was increasing contact between the survey group and other particularly concerned teachers.  Quite a few teachers offered their skills and assistance, signed a non-disclosure agreement, and

joined the team.  The survey group solicited specific skills to help with solutions for the AAHCC including graphic, web, and publication design, writing, and even teachers who would be interested in a regional leadership position, as it appeared that a larger and more dispersed structure could greatly benefit the AAHCC.

23.  As to paragraph 23, Defendants admit that for a short time after the survey was sent they remained anonymous.  This was largely due to the fact that the AAHCC has displayed a pattern of behavior over many years of either willful ignorance or  negative reaction to teachers who approached them with questions or concerns (Exhibit J is only one of many examples of this). The group also felt that it increased the professionalism of their efforts.  They did not want to be personally attacked – they wanted to focus on issues and facts. True to form, the AAHCC reacted very negatively from the beginning – this was no surprise, as resistance to change was a characteristic strongly noted by many teachers.   The AAHCC sent out an e-mail to its teachers labeling the survey e-mail "spam and a scam" (Exhibit K). and even threatened that whoever opened it might get a virus.  The survey continued to be a subject of much controversy on the AAHCC teacher forums.  Many teachers, including those involved with the survey group, connected on these forums and discussed the issues raised by the survey group.  They also held discussions in other social media such as Facebook, and communicated via e-mail.  These communications strengthened relationships between the survey group and other teachers.

24.  As to paragraph 24, Defendants admit that Kyle Thomas made contact with Angela Hathaway.  Defendants were without personal knowledge of any recordings that were made, and Kyle Thomas did not give any consent for recording to be made of the conversation. Defendants deny that Kyle Thomas asked Angela to serve as an emissary, rather defendants claim that Angela offered to make contact with her in-laws on Kyle Thomas' behalf.  Kyle tried

reaching out to any member of the Hathaway family that he could find, hoping to gain some insight into how the team might best accomplish its goals, and he connected with Angela Hathaway, Jay and Marjie's daughter in-law by her marriage to their son (and AAHCC webmaster), Robert Hathaway.  Angela seemed amenable, suggesting that she act as a go-between with her in-laws due to two issues: her desire to develop her own curriculum and inform them about this choice

 first, and apparent concerns about how the news would affect her in-laws' poor health.  Kyle spoke to the team very positively and hopefully about his conversations with Angela.  Angela said that she had been putting together her own childbirth method (Exhibit L - while Angela tried to "clean up her tracks" by deleting evidence of her plans this past November in preparation for this lawsuit, quotes from her deleted postings can be read in replies), and wanted to tell her in-laws about it when they came to visit while they were conducting a training on the east coast. She wanted them to be in the best mood possible, so she asked that the team not act until she had a chance to talk to them, and she offered to be an emissary for the group's efforts at that time as well, but only after informing her in-laws of her intentions to provide her own childbirth education system.  When the time came, Angela apparently did not approach her in-laws as expected.  It

appeared that she had somehow closed ranks with them, and the team had to move forward without her assistance.


25.  Defendants deny the allegations of paragraph 25 in that statements are mischaracterized and misrepresented when taken out of context; further, Defendant Kyle Thomas cannot admit or deny the exact words that were used in a conversation because he does not have recollection as to the exact words used and he did not consent to the recording of the conversation. The

survey results – which were overall unsurprising, because they reflected what individual

teachers had been saying publicly and privately for years – were analyzed, a professional report

was put together, and it was presented to the AAHCC – and the public – with some detailed

questions about what changes they would be willing to make based on the data, and whether

they would be willing to commit to those changes in the following year's teacher contract.  The

group felt that a contractual commitment was necessary after years of "we tried that and it didn't

work," or "we'll look into it," or "we'll refer it to the board," followed by inaction.  The AAHCC,

following its pattern of behavior demonstrated over decades, continued its negativity and non-

response to the questions posed with the survey report.  The survey group realized that the

changes they hoped for were not going to happen without more drastic action.  They looked to

the contingency plan of creating a new organization that would offer superior materials and

support, and help Dr. Bradley's philosophy to survive and even thrive, eventually touching more

mothers in one year than the AAHCC had touched in its entire forty.  The team knew that, if they

offered such an organization, the AAHCC as it currently existed could not compete, and given

their stalwart resistance to positive change, the team sought a solution that would maintain

respect for the work that Marjie and Jay had done over the past forty years and allow them to

save face.  When a contact revealed the possibility of an "angel investment," the team came up

with the idea of offering the Hathaways a package that included a retirement for them and a

royalty that they could pass down to their family in perpetuity, allowing them to enjoy their

golden years while staying involved as speakers and board members.  In order to make it look

like an exchange of value (again, with the goal of saving face), the offer was attached to the

license of the trademark for "The Bradley Method®," along with an offer (for a separate sum of

money) to purchase the website and teacher records dating back approximately fifteen years (in

order to facilitate recruiting teachers who had left – voluntarily or involuntarily – due to

dissatisfaction with the AAHCC).  The team did not intend to use these marks except for historical purposes.

26.  Defendants deny the allegations of paragraph 26 in that statements are mischaracterized and misrepresented when taken out of context; further, Defendant Kyle Thomas cannot admit or deny the exact words that were used in a conversation because he does not have recollection as to the exact words used and he did not consent to the recording of the conversation.  The statements referenced as "interference with trainings" are actually based upon Kyle's warning to Angela Hathaway that the lawyer for the Bradley estate, with whom (along with Dr. Bradley's daughters) he had contact at the time, was considering filing a cease and desist that would prevent the AAHCC from conducting scheduled trainings.  Again, Kyle was not wishing or threatening negativity - he was trying to prevent it.

27.  Defendants admit the allegations of paragraph 27.

28.  Defendants admit the allegations of paragraph 28.  In the letter sent by Mr. McElhinney to Mr. Carroll (Plaintiff's verified complaint, Exhibit 4), Mr. McElhinney again represented "BRADLEY" as a registered trademark "BRADLEY(R)" owned by the AAHCC.  He also stated that Kyle Thomas had threatened the use of an explosive device.  This letter has been made public record in multiple locations including the AAHCC's own complaint which was published on the AAHCC's website.

29.  Defendants deny the allegations of paragraph 29, as statements are mischaracterized and misrepresented when taken out of context; further, Defendant Kyle Thomas cannot admit or deny the exact words that were used in a conversation because he does not have recollection as to the exact words used and he did not consent to the recording of the conversation.  Kyle Thomas' tone in this phone call was not "enraged" or "threatening," but rather pleading.  Since

Angela Hathaway had offered to act as a "buffer," he was asking her to help her in-laws save themselves from making more poor business decisions.

30.  Defendants deny the allegations of paragraph 30.

31.  Defendants deny the allegations of paragraph 31 in that statements are mischaracterized and misrepresented when taken out of context, except that defendants admit that an email was sent to AAHCC instructors, and that the website www.bradleyreborn.com was available on October 29th, 2010.  The statement regarding the AAHCC being wholly responsible for the creation of Bradley Reborn did not refer to spinning off or any kind of relationship; rather, the statement, taken in context (Plaintiff's verified complaint, Exhibit 7), notes that Bradley Reborn was created as an entirely new entity to fulfill a need that itself was in direct response to the AAHCC's mismanagement and treatment of its teachers.  In the context of that statement, there could be no confusion as to the relationship between the AAHCC and Bradley Reborn.

32.  Defendants deny the allegations of paragraph 32, except that defendants admit to registering the domains www. bradleyreborn.com and www.bradleyreborn.net, as well as the use of social networking sites.  Defendants admit that the webpage www.bradleyreborn.com has surpassed 100,000 pageviews.

33.  Defendants admit the allegations of paragraph 33.

34.  Defendants deny the allegations of paragraph 34, except that Defendants admit that Ellen Contard filed three trademark applications as alleged.  On November 8th, a conversation about the veracity of the Bradley® trademark occurred on the AAHCC teacher forums that turned the attention of many teachers to the fact that the AAHCC did not, in fact, have a registration for the Bradley® trademark, and thus should not be decrying Bradley Reborn for its name.  While the

Bradley Reborn team had been comfortable in this knowledge, they had also seen that the Hathaways were willing to resort to unethical tactics, including defamation of character and trademark abuse, to try to bully their first large-scale, legitimate competition out of business. The Bradley Reborn team became concerned that the Hathaways would attempt to register names and terms that Bradley Reborn intended to use in trade (a concern that has been born out by actions such as the Hathaways' purchasing of a prospective domain name while Brio Birth members were brainstorming on a Facebook group and the briobirth.com website on 14 December 2010 - see Exhibit M), and so accelerated the timing of filing for its own trademarks. Because there was some issue with the status of the company bank account and the Paypal account, Ellen Contard filed for trademarks for "Bradley," "Bradley Reborn," and "Bradley Birth" in her own name, with the intent to enable the company to use them in business.  This filing was done after a search to ensure that there were no marks that would be confusingly similar.  On a search of "Bradley" through the United States Patent and Trademark Office, approximately 180 marks of varying statuses containing the word "Bradley" came up.  The only one that was registered to the AAHCC or the Hathaways was "The Bradley Method." Not one of the 22 marks that is simply "Bradley," live or dead, is registered to the Hathaways or the AAHCC.  A trademark search engine that gives many more results than the USPTO returned similar results – approximately 540 entries, and no "Bradley" mark registered to the AAHCC or the Hathaways. On that search engine, the 540 results from a search for the word "Bradley" included many marks that were phrases that included the word "Bradley."  However, "The Bradley Method" did not show up in those results, even though that mark could be found on the same search engine by searching on the entire phrase.  Since filing for the marks, Ellen Contard has learned that BRADLEY and BRADLEY BIRTH are generic, and has announced plans to abandon those two marks.

35.  Defendants deny the allegations of paragraph 35, except that Defendants admit to offering current and former AAHCC instructors the opportunity to join Bradley Reborn for a fee of $195, Defendants admit to the use of regional representatives as part of a corporate structure. Defendants do not have personal knowledge as to the specific contracts that AAHCC has in place with unnamed individuals, and therefore cannot admit or deny as to the existence of such contracts.  Current and former AAHCC instructors are offered a rate similar to that of renewal dues because they are functionally being offered accelerated certification due to their experience with the philosophies of Dr. Bradley.  Because the same resources are not being devoted to training these educators as are being devoted to training new instructors, Brio Birth is able to offer this rate that is in no way unfair.  In addition, the normal advertised new teacher price is on par with the AAHCC training fee for a greater value, and in no way constitutes unfair competition.  AAHCC teachers may be disaffiliating to join Brio Birth (as many have over the years to pursue certification with Lamaze, CAPPA, Hypnobabies, Birthing from Within, or other entities, or to simply teach independently), but it is not due to confusion - it is due to dissatisfaction with the AAHCC (Exhibit N).  The existence of Brio Birth is very polarizing in the Bradley community, and teachers are not confused, nor likely to be confused, as to the nature of the relationship between Brio Birth and the AAHCC.

36.  Defendants deny the allegations of paragraph 36, except that Defendants are without personal knowledge as to the actions of unnamed "prospective teachers and clients" and therefore cannot admit or deny as to those allegations.  The only contact that Brio Birth has had with "prospective teachers and clients" was not initiated by Brio Birth.  In such situations, Brio Birth gave a forthright assessment of the situation and informed the consumers of their rights under federal law, namely the "Buyer's Remorse Act."  Any decisions made by the consumers were their own.

37.  Defendants admit the allegations of paragraph 37.

38.  Defendants deny the allegations of paragraph 38.  In fact, Brio Birth offers products and services similar in type to the products and services offered by the AAHCC, but superior in quality and value.  The survey was done before the decision was made to start a new company - it was originally intended as a gift to the AAHCC (such surveys will often run $50,000-$70,000 in academia, and are even more costly in industry).  The results of the survey were thoroughly unsurprising to anyone involved in Brio Birth or anyone else who had any substantial experience with the AAHCC, and did not in any way substantially affect the design and philosophy of Brio Birth. Instructors are free to choose which certifying organization they believe is the best fit for their practice.  They are not anybody's property to "steal."  The existence of Brio Birth has, in fact, increased the attention to the Bradley name, and has increased traffic to the AAHCC's own consumer website.  The AAHCC's "THE BRADLEY METHOD" trademark has been devalued to the point of becoming generic by their own (and their affiliated instructors' authorized) use of it, as well as their failure to educate the public on "THE BRADLEY METHOD" as a source of goods or services rather than a type of goods or services.  In addition, rather than the reverse situation claimed by the AAHCC, the AAHCC is, in fact, stealing ideas from Brio Birth (Exhibits M and O).

39.  As to paragraph 39, Defendants deny all allegations including inferences unless specifically admitted.

40.  Defendants deny the allegations of paragraph 40.  "THE BRADLEY METHOD," while it was last registered in 2001, has become generic.

41.  Defendants deny the allegations of paragraph 41.  "BRADLEY REBORN" is in no way confusingly similar to "THE BRADLEY METHOD," nor is there any intent to cause confusion.  In

determining confusion, the court may use the criteria set out in Restatement of Torts § 729 (1938):

> "(a) the degree of similarity between the designation and the trade-mark or trade name in
>
>> (i) appearance;
>>
>> (ii) pronunciation of the words used;
>>
>> (iii) verbal translation of the pictures or designs involved;
>>
>> (iv) suggestion;
>
> (b) the intent of the actor in adopting the designation;
>
>> (c) the relation in use and manner of marketing between the goods or services        marketed by the actor and those marketed by the other;
>
> (d) the degree of care likely to be exercised by purchasers."

See Drexel Enterprises v. Richardson, 312 F.2d 525, 528 (10th Cir.1962).

In applying the above test to this case:

a) (i) Appearance - while both "THE BRADLEY METHOD" and "BRADLEY REBORN" share one word in common - "Bradley" - the overall "look" of the brands are quite different, and there is a great deal of difference between the materials produced.

a)(ii) "Method" and "Reborn" are quite dissimilar in pronunciation.

a)(iii) n/a

a)(iv) Use of the word "reborn" inherently suggests something different and new.

b) Intent of the actor in adopting the designation was not to associate with the AAHCC in any way, shape, or form.  The use of the word "Bradley" - the only common element - was to honor a famous person, Dr. Robert A. Bradley, and his philosophies and work in childbirth.

c) while the goods/services marketed are in the same industry, the manner of marketing and overall feel of Bradley Reborn is by design different than The Bradley Method.

d) Consumers of childbirth education, i.e., expectant parents, are more discerning about their purchase than consumers of other products, vastly decreasing the likelihood of confusion.  This is due to the fact that they are making decisions surrounding a major life event with a great deal of emotional implication.

42.  Defendants deny the allegations of paragraph 42.  Plaintiff's mark has become generic.  In addition, Plaintiff vastly overestimates and misrepresents "extensive advertising, sales, success, goodwill, and consumer recognition."

43.  Defendants deny the allegations of paragraph 43.

44.  Defendants deny the allegations of paragraph 44.  Plaintiff has suffered and is continuing to suffer economic losses directly and proximately caused by Plaintiff's own mismanagement. This is a pattern demonstrated over a period of years long before Brio Birth came into existence. The only difference that Brio Birth has made is to offer a Bradley-philosophy-based alternative

for a certifying organization, and to raise awareness of the mismanagement and maltreatment by the AAHCC.

45.  As to paragraph 45, Defendants deny all allegations including inferences unless specifically admitted.

46.  Defendants deny the allegations of paragraph 46, except that BRADLEY is not and never has been a trademark registered to the Plaintiff, and Defendants are without personal knowledge as to the specific use of the term BRADLEY since 1971.  Usage of the term BRADLEY in connection with childbirth education has not been exclusive to the AAHCC, and the AAHCC has misrepresented BRADLEY as a registered trademark.  Therefore, the AAHCC has not established common law rights to BRADLEY.

47.  Defendants deny the allegations of paragraph 47.  Plaintiff has not established common law rights to BRADLEY.  Further, the consuming public recognizes BRADLEY as a type of good or service rather than a single source, and the recognition among those who do recognize BRADLEY is not necessarily one of high quality.

48.  Defendants deny the allegations of paragraph 48.

49.  Defendants deny the allegations of paragraph 49.  No confusion has been caused, and confusion is not likely due to the difference in quality between the services offered by Plaintiff and Brio Birth, and because the community of birth workers are already aware of the differences between Brio Birth and the AAHCC (see also Paragraph 41 for application of the Drexel test).

50.  Defendants deny the allegations of paragraph 50.  Defendants were aware of common usage of the term BRADLEY in connection with Dr. Bradley's work and that the Plaintiffs had no registered trademark on the term BRADLEY.

51.  Defendants deny the allegations of paragraph 51.  The only trademarks and trade names owned by the AAHCC are "THE BRADLEY METHOD" and "THE AMERICAN ACADEMY OF HUSBAND-COACHED CHILDBIRTH," and Brio Birth has no intent or desire to use either of those outside the context of fair use.

52.  Defendants deny the allegations of paragraph 52.  The root cause of any loss by the Plaintiff is the Plaintiff's own mismanagement.

53.  Defendants deny the allegations of paragraph 53.

54.  Defendants deny the allegations of paragraph 54.  Any irreparable damage to the Plaintiff is the result of their own actions.  Even some of the AAHCC's strongest supporters have said that the AAHCC is a dying brand (Exhibit P).

55.  As to paragraph 55, Defendants deny all allegations including inferences unless specifically admitted.

56.  Defendants deny the allegations of paragraph 56.

57.  Defendants deny the allegations of paragraph 57.  See Paragraph 41 for application of the Drexel test.

58.  Defendants deny the allegations of paragraph 58.  Brio Birth has not, nor does it intend to, use the mark "THE BRADLEY METHOD" outside the context of fair use.

59.  Defendants deny the allegations of paragraph 59.

60.  Defendants deny the allegations of paragraph 60.  Any irreparable damage to the Plaintiff is the result of their own actions.  Even some of the AAHCC's strongest supporters have said that the AAHCC is a dying brand (Exhibit P).

61. Defendants deny the allegations of paragraph 61. Any irreparable damage to the Plaintiff is the result of their own actions. Even some of the AAHCC's strongest supporters have said that the AAHCC is a dying brand (Exhibit P).

62. As to paragraph 62, Defendants deny all allegations including inferences unless specifically admitted.

63. Defendants deny the allegations of paragraph 63. See Paragraph 41 for application of the Drexel test.

64. Defendants deny the allegations of paragraph 64. Any irreparable damage to the Plaintiff is the result of their own actions. Even some of the AAHCC's strongest supporters have said that the AAHCC is a dying brand (Exhibit P).

65. Defendants deny the allegations of paragraph 65.

66. Defendants deny the allegations of paragraph 66. Any irreparable damage to the Plaintiff is the result of their own actions. Even some of the AAHCC's strongest supporters have said that the AAHCC is a dying brand (Exhibit P).

67. As to paragraph 67, Defendants deny all allegations including inferences unless specifically admitted.

68. Defendants deny the allegations of paragraph 68. Plaintiff has not established any exclusive rights to the BRADLEY name, and their federally registered mark THE BRADLEY METHOD has become generic through the AAHCC's (and their affiliated instructors' authorized) use, as well as their failure to educate the public on THE BRADLEY METHOD as a source rather than a type of good or service.

69. Defendants deny the allegations of paragraph 69, except that Defendants admit that Defendant Kyle Thomas registered the domain names www.bradleyreborn.com and www.bradleyreborn.net.  Neither of these two domains are currently in use by Defendant Brio Birth LLC, and www.bradleyreborn.net has never been used by Brio Birth LLC.

70. Defendants deny the allegations of paragraph 70.  The domains "www.bradleyreborn.com" and "www.bradleyreborn.net" have nothing to do with the Plaintiff.  The Plaintiff vastly overestimates and misrepresents its fame and goodwill.

71. Defendants deny the allegations of paragraph 71. See paragraph 41 for application of the Drexel test.

72. Defendants deny the allegations of paragraph 72.  The domain names in question do not correspond to any mark owned by the Plaintiff, and the mark that they do own has become generic.

73. Defendants deny the allegations of paragraph 73.  Brio Birth is operating in good faith and providing superior competition.  Any harm caused to the Plaintiff is due to the Plaintiff's own mismanagement and unwillingness to engage in fair competition.

74. Defendants deny the allegations of paragraph 74.

75. Defendants deny the allegations of paragraph 75.  Any irreparable damage to the Plaintiff is the result of their own actions.  Even some of the AAHCC's strongest supporters have said that the AAHCC is a dying brand (Exhibit P).

76. As to paragraph 76, Defendants deny all allegations including inferences unless specifically admitted.

77. Defendants deny the allegations of paragraph 77. Superior competition is not unfair competition. Brio Birth welcomes healthy competition by the AAHCC or any other organization that chooses to compete. The AAHCC is attempting to use litigation to stamp out all competition and maintain and unfair monopoly.

78. Defendants deny the allegations of paragraph 78. Any irreparable damage to the Plaintiff is the result of their own actions. Even some of the AAHCC's strongest supporters have said that the AAHCC is a dying brand (Exhibit P).

79. As to paragraph 79, Defendants deny all allegations including inferences unless specifically admitted.

80. Defendants are without knowledge as to what unnamed third parties may have entered into contracts with the Plaintiff, and therefore cannot admit or deny the allegations of paragraph 80.

81. Defendants deny the allegations of paragraph 81. Brio Birth offered superior products and services. Any diversion of business was freely and legally done by customers. Brio Birth has no knowledge of a valid contract between the Plaintiff and any unnamed third parties, nor of any alleged breach that may have occurred on the part of said unnamed third parties.

82. Defendants deny the allegations of paragraph 82.

83. Defendants deny the allegations of paragraph 83. Any irreparable damage to the Plaintiff is the result of their own actions. Even some of the AAHCC's strongest supporters have said that the AAHCC is a dying brand (Exhibit P).

84. As to paragraph 84, Defendants deny all allegations including inferences unless specifically admitted.

85. Defendants deny the allegations of paragraph 85.

86. Defendants deny the allegations of paragraph 86.

87. Defendants deny the allegations of paragraph 87.

## COUNTERCLAIMS

88. The AAHCC has continuously and substantially used the term "Bradley" and the term "The Bradley Method" in a generic sense in communications with teachers associated with the AAHCC through teacher training materials (see Exhibit E, Exhibit Q, and Plaintiff's verified complaint, Exhibit 2) and other communication, including website material.

89. The AAHCC has continuously and substantially allowed the term "Bradley" and the term "The Bradley Method" to be used in a generic sense in communications with the public by their instructors (see Exhibits BH through CE).

90. The AAHCC has continuously and substantially used the term "Bradley" and the term "The Bradley Method" in a generic sense in communications with students associated with the AAHCC through student training materials and other communication including website material (Exhibits R and F).

91. The AAHCC has continuously and substantially used the term "Bradley" and the term "The Bradley Method" in a generic sense on their consumer website, http://www.bradleybirth.com, including answering the question "What is The Bradley Method" by answering that the term indicates a type of childbirth, rather than a source of childbirth education (see Exhibit Y).

92. The AAHCC has continuously and substantially allowed the term "Bradley" and the term "The Bradley Method" to be used in a generic sense in communications with the public through major media outlets (see Exhibits Z through BI).

93.  The relevant public recognizes the term "Bradley" and "The Bradley Method" primarily as a generic term for a type of birth rather than as a source of services related to birth education.

94.  The AAHCC has continuously and substantially indicated federal trademark registration on marks that do not have a federal registration in the United States Patent and Trademark Office (See Exhibit Q, Plaintiff's verified complaint, Exhibit 2).

95.  The AAHCC intended to deceive the teachers and the public by indicating federal trademark registration on the term "Bradley."

96.  The AAHCC has represented in advertising material that over 86% of births from students of the AAHCC have unmedicated births (see Exhibits R, F, CE, CF).

97.  Upon information and belief, the actual rate of unmedicated births is substantially lower than the advertised rate of 86% (Exhibit S).

98. The rate of unmedicated births for students of the AAHCC is a substantial factor in attracting students to the AAHCC.

99. Dr. Robert Bradley conducted research on childbirth and published his research in several works including "Husband-Coached Childbirth" and other works.

100.  The information published by Dr. Robert Bradley is in the public domain and the public is free to read and use the research of Dr. Bradley.

101. Many teachers previously associated with the AAHCC have offered suggestions for improvement to the AAHCC.

102. The Hathaways have publicly demeaned individual teachers who have offered suggestions for improvement to the AAHCC (Exhibit T is one prominent example of this).

103.  Many of the teachers associated with the AAHCC or formerly associated with the AAHCC are dissatisfied with the services provided by the AAHCC.

104. Many of the teachers previously associated with the AAHCC have disassociated from the AAHCC solely based on their experiences with the AAHCC.

105. Many of the teachers previously associated with the AAHCC have continued to teach childbirth classes and advertise the terms "Bradley" and "The Bradley Method" for a substantial number of years.

106. Use of "Bradley" and "The Bradley Method," as well as use of the intellectual property produced by the AAHCC, by those not associated with the AAHCC have been brought to the attention of the AAHCC (Exhibits U and V are two prominent examples), and the AAHCC did not prevent use of the terms "Bradley" and "The Bradley Method" or the copying of their intellectual property.

107.  The AAHCC was familiar with Angela Hathaway and the content posted on the internet by Angela Hathaway.

108.  Angela Hathaway has never been certified as a childbirth educator by the AAHCC.

109. Angela Hathaway taught childbirth classes for a substantial period and advertised on a website using the term "Bradley" and claiming a "Bradley" childbirth educator certification (Exhibit W).  This profile has since been deleted in preparation for this lawsuit.

## FIRST CLAIM FOR RELIEF

(Cancellation of a Federally Registered Trademark, 15 U.S.C. § 1064,  as "Abandoned" 15 U.S.C. § 1127 )

110. Defendants reallege and incorporate by reference the forgoing paragraphs

as though fully set forth herein.

111. Plaintiff's use of the registered trademark THE BRADLEY METHOD, and the use with Plaintiffs' permission of the registered trademark THE BRADLEY METHOD by affiliated teachers and the media, has caused the consuming public to primarily associate the term with a type of good or service rather than the source of the goods or services.

112. Plaintiff has failed to educate the public, by their own authorized use or by protest to unauthorized use, so as to prevent the term THE BRADLEY METHOD from becoming a term primarily used as generic term for a type of childbirth education rather than a source of childbirth education.

113. Plaintiff has attempted to enforce the trademark of this now generic term, thus restraining the trade of others who would provide consumers with the same type of childbirth education.

114. Plaintiff also committed fraud in filing, using a letter written in 1976 giving Dr. Bradley's consent for the use of his name.  When Plaintiff re-filed for the dead trademark in 2001, they used the same letter which falsely represented that Dr. Bradley was a live person who gave his consent.  Dr. Bradley died on 25 December 1998 (Exhibit X).  He is deceased and famous, and the permission of his estate was not obtained.

115. Plaintiff's conduct is continuing and will continue unless restrained by the Court. Unless enjoined by this Court, Plaintiff's unfair assertion of trademark rights in a generic term will continue to cause Defendant irreparable damage, loss, and injury for which it has no adequate remedy at law. Plaintiff's registered trademark should be cancelled due to the term now being generic.

116. Defendant has suffered and is continuing to suffer economic losses directly and proximately caused by Plaintiff's actions. Accordingly, Defendant is entitled to injunctive relief and damages in an amount to be proven at trial.

SECOND CLAIM FOR RELIEF

(Libel per se)

117. Defendant realleges and incorporates by reference the foregoing paragraphs

as though fully set forth herein.

118. In a communication on 29 October 2010 to Kyle Thomas' attorney, Wayne Carroll, Plaintiff, by and through their lawyer Stuart McElhinney, alleged that Kyle Thomas had "threatened the use of an explosive device" (Plaintiff's verified complaint, Exhibit 4).  This

statement has also been made broadly available as a public record in multiple venues, including the complaint filed against Kyle Thomas et al on 29 November 2010 which was published on the Plaintiff's website, with notice of the published documents sent to over 1000 people.

119. This statement falsely accuses Kyle Thomas of a crime, and is likely to diminish his trade in other business ventures.

120. On 10 December 2010, the Plaintiff, by and through their attorney Jordan Factor, stipulated in court that "there was no bomb threat."

121. In the complaint filed on 29 November 2010, Plaintiff made statements regarding Naomi Thomas' doula work in the Denver, CO area, including rumors of a controversy "leading at least two area hospitals to revoke her privileges" (Plaintiff's verified complaint, paragraph 7). These statements were published on the Plaintiff's website, with notice of the published documents sent to over 1000 people.

122. This false statement tends directly to injure Naomi Thomas in respect to her profession by imputing to her general disqualification in those respects that her profession peculiarly requires, and by imputing something with reference to her profession that has a natural tendency to lessen its profits.

123. The acts and conduct of the Plaintiff, as alleged herein, constitute defamation of character, particularly libel per se, against Kyle Thomas and Naomi Thomas.

124. Plaintiff's acts have caused Kyle Thomas and Naomi Thomas to sustain monetary damage, loss and injury, in an amount to be determined at the trial.

125. Plaintiff has engaged and continues to engage in these activities knowingly, willfully, maliciously and deliberately, so as to justify the assessment of exemplary damages against them, in an amount to be determined at the time of trial.

126. Plaintiff's aforesaid acts, unless enjoined by this Court, will continue to cause Kyle Thomas and Naomi Thomas to sustain irreparable damage, loss and injury, for which Kyle Thomas and Naomi Thomas have no adequate remedy at law.

## THIRD CLAIM FOR RELIEF

### (Fraud in the Inducement)

127. Defendant realleges and incorporates by reference the foregoing paragraphs as though fully set forth herein.

128. Plaintiff represents in their contract that only individuals who train and affiliate with the AAHCC may teach Bradley childbirth education.

129. Dr. Bradley is a famous person with a body of work in the public domain.  Any individual or organization can develop a curriculum and a class based on his work and teach this type of childbirth education.

130. Plaintiff represents that students trained by their instructors have an 86 or 87.7% unmedicated vaginal birth rate.

131. Upon information and belief, the unmedicated vaginal birth rate of students is substantially lower.

132. Individuals to whom these representations are made have no other way of knowing the falsity of these claims.

133. The emphasis of these points in the recruitment of teachers shows that the facts of the matter impact a potential teacher's decision to train and affiliate with the AAHCC, and thus ought to be disclosed.

134. These claims induce potential teachers to train and affiliate with a purportedly disproportionately successful childbirth education organization that claims to have exclusive rights to teaching a certain philosophy of childbirth education.

135. Defendants have invested considerable sums of money into obtaining and maintaining affiliation with the AAHCC due to these claims.

136. As a result of Plaintiff's activities, Defendants have been damaged in an amount to be ascertained at trial.

FOURTH CLAIM FOR RELIEF

(False Representation, 15 U.S.C. § 1125(a))

137. Defendants reallege and incorporate by reference the foregoing paragraphs as though fully set forth herein.

138. Plaintiff's activities constitute false representations in violation of § 43(a) of the Lanham Act, 15 U.S.C. § 1125(a), because Plaintiff has used a word, term, name, symbol, or device that is likely to cause confusion, or to cause mistake, or to deceive as to the affiliation, connection, or

association of defendants with another person, or as to the origin, sponsorship, or approval of their goods, services, or commercial activities by another person, or in commercial advertising or promotion, misrepresents the nature, characteristics, qualities, or geographic origin of his or her or another person's goods, services, or commercial activities.

139. Plaintiff's acts have caused Defendants to sustain damages, loss, and injury in an amount to be determined at trial.

140. Plaintiff has engaged in and continues to engage in these activities knowingly, willfully, maliciously and deliberately, so as to justify the assessment of exemplary damages against them, in an amount to be determined at the time of trial.

141. Plaintiff's acts, unless enjoined by this Court, will continue to cause Defendants to sustain irreparable damage, loss, and injury, for which Plaintiff has no adequate remedy at law.

FIFTH CLAIM FOR RELIEF

(Declaratory Judgment)

142. Plaintiff realleges and incorporates by reference the foregoing paragraphs as though fully set forth herein.

143. Dr. Robert A. Bradley is a famous person with a body of work in the public domain.

144. There are no patents relating to Dr. Bradley's childbirth philosophies.

145. The copyright for Dr. Bradley's seminal work, "Husband-Coached Childbirth," is owned by the Bradley estate.

146. Defendant seeks declaratory judgment that Plaintiff does not have exclusive rights to teach childbirth education classes based on Dr. Bradley's philosophy.

147. Defendant seeks declaratory judgment that Plaintiff does not have exclusive rights to refer to Dr. Bradley's work or use his name in their materials.

SIXTH CLAIM FOR RELIEF

(Unfair Competition)

148. Defendants reallege and incorporate by reference the foregoing paragraphs as though fully set forth herein.

149. The acts and conduct of Plaintiff as alleged herein constitute unfair competition with Defendants under Colorado and federal common law.

150. Plaintiff's acts and conduct as alleged above have damaged and will continue to damage Defendant in an amount that is unknown at the present time.

SEVENTH CLAIM FOR RELIEF

(Intentional Interference with Prospective Business Advantage)

151. Defendants reallege and incorporate by reference the foregoing paragraphs as though fully set forth herein.

152. Plaintiff has entered into contracts or business relationships with certain third parties who were existing clients of Defendants or who had communicated their interest in establishing

prospective contractual relationship with Defendants. Plaintiffs were aware of these contracts and/or prospective business relations of Defendants.

153. Plaintiffs knowingly and willfully interfered in Defendant's contracts and/or business expectancies by diverting clients from Defendants through their acts of defamation, unfair competition, deceptive trade practices, and other unlawful conduct. As a result of the Plaintiff's conduct, Defendant's clients were induced to breach or terminate contracts, business relationships, or expectancies with Defendant.

154. Plaintiff's conduct as complained of herein was knowing, willful, malicious, and deliberate.

155. Defendants have been damaged by the Plaintiff's conduct as complained of herein, in an amount to be determined at trial.

## IV. PRAYER FOR RELIEF

WHEREFORE, Kyle Thomas, Naomi Thomas, Ellen Contard, and Brio Birth, LLC request entry of judgment in their favor against Plaintiffs as follows:

A. That this Court enter a judgment finding that the terms THE BRADLEY METHOD and BRADLEY are generic and thus ineligible for trademark protection.

B.  That this court enter a judgement that the term BRADLEY has not been established as an enforceable commonlaw trademark by the AAHCC.

C. That this Court certify the above to the Director of the United States Patent and Trademark Office so the Director may make the appropriate entry upon the records of the Patent and Trademark Office pursuant to the Lanham Act, 15 U.S.C. § 1119.

D. That this Court enter a judgment finding that Plaintiff has committed libel per se against Kyle Thomas.

E. That this Court enter a judgment finding that Plaintiff has committed libel per se against Naomi Thomas.

F. That this Court enter a judgment finding that Plaintiff has acted fraudulently in the inducement of contracts between Naomi Thomas and Plaintiff, and between Ellen Contard and Plaintiff.

G. That this Court enter a judgment finding that the Plaintiff has made false representations of the nature and characteristics of its goods and services to the consuming public.

H. That this Court order Plaintiff to make public retractions of defamatory statements against Kyle Thomas and Naomi Thomas in forums and to persons including, but not limited to, those in which and to whom they published the defamatory statements.

I. That this Court order Plaintiff to deliver up for destruction or show proof of destruction of any and all advertisements, publications, labels, and any other materials in their possession, custody, or control that misuse the trademark registration symbol in violation of the Lanham Act.

J. That this Court order Plaintiffs to file with this Court and to serve upon Defendants a report in writing and under oath setting forth in detail the manner and form in which Plaintiffs have

complied with any injunction resulting from this matter within thirty days after service of such injunction.

K. That this Court order Plaintiff to turn ownership of the domains registered in bad faith in an effort to restrain Defendant Brio Birth, LLC's trade over to Defendants.

L. That this Court award Defendant such damages, compensatory and otherwise, as the proof may show.

M. That this Court award Defendant its reasonable attorneys' fees incurred in connection with this action.

N. That this Court award Defendant pre-judgment and post-judgment interest and its costs in connection with this action.

O. That this Court grant such other and further relief as this Court may deem just, proper, and equitable under the circumstances.

JURY DEMAND

Plaintiff hereby demands trial by jury as to all issues in this action triable by a jury.

DATED this 21 day of December, 2010.

Respectfully submitted,
The Carroll Law Firm, PLC

By:     /s/ Wayne Carroll_____
        Wayne Carroll
        42104 N Venture Dr. Suite C-110
        Phoenix, Arizona 85086
        Phone: 623-551-9366
        email: wayne@anthemlawfirm.com

**VERIFICATION**

I,  Kyle Thomas et al   state and depose that the facts stated in this Verified Answer are true and correct to the best of my knowledge and belief.


Kyle Thomas                                                            Naomi Thomas

  /s/ Kyle Thomas                              /s/ Naomi Thomas

By:  Kyle Thomas                        By:   Naomi Thomas


Ellen Contard                                                          Brio Birth, LLC

  /s/ Ellen Contard                            /s/ Kyle Thomas

By:  Ellen Contard                      By:  Kyle Thomas


STATE OF   Colorado

COUNTY OF   Arapahoe


        Subscribed, sworn to, and acknowledged before me by   Kyle Thomas / Brio Birth, LLC ,  Naomi Thomas   ,   Ellen Contard

This 21st day of December, 2010

Witness my hand and official seal.

        /s/ Alan F. Rymer

        Notary Public

My commission expires:   May 5, 2012

DATED this 21st day of December, 2010

Certificate of Service
ORIGINAL of the foregoing
filed electronically this _21__ day of December 2010
with the Clerk of the Court.

COPY of the foregoing sent vial email the same
date to:

Jordan D. Factor
Allen & Vellone, P.C.
1600 Stout Street, Ste. 1100
Denver, CO 80202
jfactor@allen-vellone.com,
jmartinez@allen-vellone.com
Attorneys for Plaintiff


/s/ Wayne Carroll
Wayne Carroll