IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action Number: 10-cv-02899-CMA-MEH

AMERICAN ACADEMY OF HUSBAND-COACHED CHILDBIRTH,
a California general partnership,

    Plaintiff and Counterclaim Defendant,

v.

KYLE THOMAS, an individual;
NAOMI THOMAS, an individual;
ELLEN CONTARD, an individual; and
BRIO BIRTH, LLC, a Colorado limited liability company,

    Defendants and Counterclaimants.

## DEFENDANTS' MOTION TO MODIFY THE PRELIMINARY INJUNCTION

Defendants and Counterclaimants, by and through their undersigned attorneys, hereby move the Court to modify the preliminary injunction and as grounds for this motion state as follows.

## INTRODUCTION

On December 15, 2010, this Court entered its Order Granting Preliminary Injunction (Doc. #28) ("Written Order"), which granted Plaintiff's request to enjoin Defendants from using the marks "Bradley" or "The Bradley Method" or any confusingly similar mark. Plaintiff, however, has so broadly construed the Written Order that it is asserting that Defendants cannot refer to the individual, Dr. Robert Bradley, or the fact that his teachings are incorporated into their curriculum. In fact, in a recent e-mail to a childbirth educator associated with Defendant, Brio Birth, Plaintiff has asserted that

teachers no longer affiliated with American Academy of Husband-Coached Childbirth ("AAHCC") may not "use the word 'Bradley' in connection with childbirth education" or make "any inference to similarities to Bradley in relation to childbirth".  Exhibit A attached hereto, an e-mail from AAHCC to former AAHCC educators.  Plaintiff asserts that the injunction prevents Defendants from speaking the word, "Bradley," irrespective of whether the word is being used as a trademark or creates an association with Plaintiff.  Such an interpretation of the Written Order goes far beyond any relief to which Plaintiff could be entitled.

Unfortunately, the language of this Court's Order – adopted by the Court after a submission from Plaintiff without receiving any input from Defendants – could arguably support some of Plaintiff's characterizations.  For example, although the Court indicated at the hearing that "I am not going to say you can or can't [refer to Dr. Bradley]", the Written Order actually issued states that Defendants are enjoined from using "*in any manner* BRADLEY or THE BRADLEY METHOD, or any other designation that is confusingly similar to BRADLEY or THE BRADLEY METHOD, or any of the BRADLEY or THE BRADLEY METHOD marks….".  Written Order at 13 (emphasis added).  On its face, the injunction, therefore, is not limited to using the words as trademarks (i.e. as adjectives), but could include using the words as a reference to Dr. Bradley (i.e. as nouns).  Because an injunction should only prevent use of the phrases as trademarks, i.e. source identifiers, the language of the injunction should be modified. Otherwise, the injunction would violate trademark law and Defendants' First Amendment rights.

Additionally, when the Court originally set the bond, the trial of this case was set

-2-

to begin in March, 2011. At the request of Plaintiff, however, the March trial date was vacated and re-set to August. Accordingly, the duration of the preliminary injunction was increased from three months to eight months. As a result, the Court should increase the bond required for the injunction from $50,000 to $150,000 to ensure a fair bond is in place for a preliminary injunction of this duration.

### CERTIFICATE OF COMPLIANCE WITH D.C.COLO.LCivR 7.1(A)

Pursuant to D.C.COLO.LCivR 7.1(A), on March 1, 2011, counsel for Defendants, Kerry van der Burch, conferred with Jim Helfrich, counsel for Plaintiff, regarding the relief requested herein. Plaintiff does not agree to such relief.

### FACTUAL BACKGROUND

Kyle Thomas, Naomi Thomas, and Ellen Contard (collectively the "Individual Defendants") founded Brio Birth LLC ("Brio Birth") in 2010 out of a desire to teach natural childbirthing in a new, modern way that relies on the teachings of Dr. Bradley, but also infuses techniques and lessons from several other childbirth experts. Initially, Brio Birth conducted business as Bradley Reborn, but, in accordance with this Court's injunction, it now conducts business solely under the name "Brio Birth." Brio Birth is still teaching Dr. Bradley's methods in combination with other childbirth techniques, but is facing a huge impediment: a potentially overly broad injunction.

Plaintiff AAHCC is an organization that trains and certifies natural childbirth educators. Complaint at 6, ¶ 14. In 1978, the United States Patent and Trademark Office ("USPTO") granted AAHCC a trademark in the term "The Bradley Method" for "educational services—namely, conducting courses and workshops relating to childbirth

training for instructors in the field, and for prospective parents." Complaint at 7, ¶ 16. AAHCC also claims ownership of a common law trademark in the term "Bradley" to identify Plaintiff as the source of the natural childbirth curriculum taught by the AAHCC. Complaint at 7, ¶ 17. Although their curriculum is based in part on Dr. Bradley's teachings, Plaintiff owns no intellectual property rights in Dr. Bradley's book or the methods taught therein.

## PROCEDURAL BACKGROUND

Plaintiff filed this lawsuit seeking, among other things, injunctive relief. At the Preliminary Injunction Hearing held on December 10, 2010, the Court entered a preliminary injunction initially prohibiting Defendants' use of "Bradley Reborn or any reference to Bradley." Transcript of Preliminary Injunction Hearing on December 10, 2010 ("Transcript") (Doc. No. 47), at 176:22-23; *see also* Minute Entry for Preliminary Injunction Hearing at Docket No. 22 (granting Motion). At the hearing, the Court further explained the injunction and its scope:

> I am not going to say you can or can't [refer to Dr. Bradley] …. The problem here is I am not going to tell you what you can and cannot do. I am saying you cannot use "Bradley" or "The Bradley Method." And if you use Dr. Bradley, I don't know if that will be a sufficient distinction, because I don't know in what context it is going to be used. So I can't give you advice.

Transcript at 178:3, 11-16. While there is no dispute that this Court enjoined the Defendants from using the terms "Bradley" or "The Bradley Method" as trademarks or trade names, it appears that the Court did not intend to enjoin all reference to Dr. Bradley. Notwithstanding that, the Written Order (Doc. #28), drafted by Plaintiff's counsel, enjoins all uses of the word "Bradley." Specifically, the Written Order prohibits

-4-

Defendants:

> From using *in any manner* BRADLEY or THE BRADLEY METHOD, or any other designation that is confusingly similar to BRADLEY or THE BRADLEY METHOD, or any of the BRADLEY or THE BRADLEY METHOD marks….

Written Order at 13 (emphasis added).  Thus, the injunction as written could be construed to prohibit reference to Dr. Bradley, thus conflicting with the Court's ruling.  In fact, Plaintiff has interpreted the preliminary injunction exactly in this manner.  *See* Exhibit A.  Specifically, in an e-mail to a childbirth educator formerly affiliated with AAHCC, but now affiliated with Defendant Brio Birth, Plaintiff asserts the following substantive rights:

> You may not teach Bradley Method classes or mix Bradley Method with other classes or methods or teach "the best of Bradley", "Bradley Style", *or any inference to similarities to Bradley in relation to childbirth*, etc. . . .
>
> You may not represent yourself to the public as a Bradley Method teacher or *use the term Bradley in conjunction with childbirth*. This is a privilege and responsibility for current, fully affiliated teachers only. . . .

*Id.* (emphasis added).

The principal issue left open by the conflict between the Court's ruling from the bench and the Written Order is whether, and to what extent, Defendants may refer to Dr. Bradley and, derivatively, the teachings set forth in his book.  To the extent that the Written Order may be read to preclude any reference to Dr. Bradley, it grants Plaintiff rights beyond those secured by trademark law, is impermissibly overbroad, and violates the First Amendment.  Accordingly, Defendants seek clarification from the Court that the Written Order does not preclude reference to Dr. Bradley or the principles he created.

## **ARGUMENT**

The Lanham Act gives district courts the "power to grant injunctions, according to the principles of equity and upon such terms as the court may deem reasonable, to prevent ... a violation [of the Act]." 15 U.S.C. § 1116(a) (2006). However, those injunctions must be narrowly tailored to eliminate only the specific harm alleged. *See, e.g., E. & J. Gallo Winery v. Gallo Cattle Co.*, 967 F.2d 1280, 1297 (9th Cir. 1992). An overbroad injunction is an abuse of discretion. *Id.* Moreover, "[b]ecause a preliminary injunction is an extraordinary remedy, the right to relief must be clear and unequivocal." *Greater Yellowstone Coal. v. Flowers*, 321 F.3d 1250, 1256 (10th Cir. 2003). Finally, district courts retain the discretionary power to modify a preliminary injunction, and a decision to modify will not be reversed absent an abuse of discretion. *Cablevision of Texas III, L.P. v. Oklahoma W. Tel. Co.*, 993 F.2d 208, 210 (10th Cir. 1993).

## I. TRADEMARK RIGHTS IN A SURNAME CANNOT PRECLUDE LAWFUL REFERENCE TO THE INDIVIDUAL OR THEIR WORKS

A trademark in an individual's name does not prevent reference to or discussion of the individual in a nontrademark manner. *Warren Miller Entm't. Inc. v. Level 1 Prods., Inc.*, No. 05-cv-02254-CMA-BNB, 2009 WL 3059121, at *1 n.2 (D.Colo. 2009); 2 *McCarthy on Trademarks & Unfair Competition* § 13:3 (4th ed.) ("[N]o one seller should have the right to prevent others from using a descriptive term to honestly describe their goods or services by telling the name of a person involved."). A trademark in a personal name is a descriptive term because it is not inherently distinctive—it merely describes one attribute of the product, the name of a person related to the business. *Marker Int'l v. DeBruler*, 844 F.2d 763, 764 (10th. Cir. 1988); 2 *McCarthy on Trademarks & Unfair Competition* § 13:3 (4th ed.). Thus personal names are generally weak marks and,

-6-

even in if secondary meaning is established, the owner of such marks cannot prevent others from using the individual's name in a non-trademark capacity.  *Warren Miller Entm't. Inc.,* 2009 WL 3059121, at *1 n.2 (D.Colo. 2009); *Herman Miller, Inc. v. Palazzetti Imports & Exports, Inc.*, 270 F.3d 298, 319 (6th Cir. 2001); 2 *McCarthy on Trademarks & Unfair Competition* § 13:3 (4th ed.).

In *Hensley Manufacturing v. ProPride, Inc.*, 579 F.3d 603, 610-13 (6th Cir. 2009), the Sixth Circuit upheld the dismissal of trademark infringement claims on the grounds that the defendant used the plaintiff's mark in a non-trademark manner.  There, the plaintiff, Hensley Manufacturing, and the defendant, ProPride, both manufactured and sold trailer towing products designed by the same man: Jim Hensley.  *Id.* at 606.  The plaintiff marketed and sold its trailer hitch designed by Hensley under the name "Hensley Arrow" or "Arrow".  *Id.* at 607.  The plaintiff also owned a registered trademark in the term "Hensley" for trailer towing products.  *Id.*  Over a decade later, Jim Hensley designed a new trailer hitch and licensed it to the defendant, a direct competitor of the plaintiff.  *Id.*  The defendant then marketed the new trailer hitch under a completely different brand.  *Id.* at 611.  However, the defendant repeatedly mentioned "Jim Hensley" by name in its marketing and advertising.  *Id.*  The court held that defendants use' of Jim Hensley's name constituted a nontrademark use.  *Id.* at 611-12.  As the Sixth Circuit explained:

> The company's advertisements do not use the name "Hensley" in the trademark sense; they use Jim Hensley's name only to identify him as a designer of trailer hitches (including the ProPride 3P Hitch),describe his relationship with ProPride, and tell the story behind his success.  To the extent they cause some level of consumer confusion, Hensley Manufacturing assumed that risk by trademarking Jim Hensley's own

-7-

personal last name.
*Id*. at 612. Accordingly, the plaintiff's claims for trademark infringement were properly dismissed. *Id*. at 607.

Likewise, the United States District Court for the District of Colorado has found that a company's trademark in an individual's name does not prevent a second company from honestly identifying and describing that individual and his connection to their services. *Warren Miller Entm't. Inc.*, No. 05-cv-02254-CMA-BNB, 2009 WL 3059121, at *1 n. 2. In *Warren Miller*, the court reasoned that the plaintiff's ownership of a rights in the mark "Warren Miller" did not prevent the defendant from using the name "Warren Miller" to refer to Warren Miller, the individual, and to describe his involvement with their product. *Id*. The plaintiff in *Warren Miller* held a federally registered trademark in the term "Warren Miller" for use in the marketing of films, athletics, and music. *Id*. at *1. Mr. Miller appeared in a film produced by the defendant called "Refresh", which featured captions identifying Mr. Miller by name. *Id*. The defendant also promoted "Refresh" in marketing materials by expressly mentioning Mr. Miller's participation in it. *Id*. In denying the motion for a TRO, the court reasoned that marks consisting of a personal name are "likely not entitled to strong protection" because that proper name "will necessarily be frequently used by Mr. Miller and others simply for the purposes of identifying him." *Id*. at *1 n.2. Therefore the defendant was entitled to identify Mr. Miller to the public and advertise his participation in the film by referencing him by name. *Id*. "These uses of Mr. Miller's name are entirely consonant with the public's interest in being able to truthfully identify a specific person." *Id*.; *see also*

-8-

*Brennan's Inc. v. Brennan's Restaurant, LLC*, 360 F.3d 125, 131-32 (2d Cir. 2004) ("[C]ourts generally are hesitant to afford strong protection to proper names . . . To prevent all use of [a man's personal name] is to take away his identity") (internal quotes omitted).

In the injunction context, courts typically allow the defendant to use the trademarked name in a non-trademark manner to describe that person's relationship with the defendant's goods or services, often in conjunction with a disclaimer. *See, e.g.*, *Taylor Wine Co. v Bully Hill Vineyards*, 569 F.2d 731, 736 (2d Cir. 1977); *E. & J. Gallo Winery v. Gallo Cattle Co.*, 967 F.2d 1280, 1297 (9th Cir. 1992). In *Taylor Wine*, for example, the Second Circuit held that a preliminary injunction enjoining the use of the name "Taylor" or "any other colorable imitation" was "too broad", and modified the injunction to allow use of the proper name in connection with the goods sold. 569 F.2d at 736. The plaintiff in the case, Taylor Wine Company, marketed wine under the name "Taylor" since 1880 and owned thirteen registered trademarks. *Id.* at 733. Walter S. Taylor owned the defendant company, Bully Hill Vineyards, which marketed a line of wines under the brand name "Walter S. Taylor" starting in 1977. *Id.* The district court broadly enjoined Bully Hill from, amongst other things, using the word "Taylor", or any variation thereof, in connection with advertising or marketing its products. *Id.* On appeal, the Second Circuit struck down the injunction as overbroad, reasoning that Mr. Taylor should be allowed to inform consumers that he is involved in the growing and distributing of wines sold by Bully Hill. *Id.* at 736. The court enjoined Bully Hill from using the "Taylor" name as a trademark, but permitted Bully Hill to show Walter's

-9-

"personal connection with Bully Hill" by using his signature on labels or advertisements if accompanied by a disclaimer of affiliation with plaintiff's company. *Id.*

In this case, the preliminary injunction arguably grants Plaintiff rights that it does not have, nor could it ever have. Written Order, at 13. As in *Taylor Wine*, this injunction is overbroad if interpreted in the manner claimed by Plaintiff. Plaintiff owns a federally registered trademark in the term "The Bradley Method" as it relates to childbirth education. Complaint at ¶ 16. Plaintiff also asserts a common law trademark in the term "Bradley" in connection childbirth education. Complaint at ¶ 17. However, both "Bradley" and "The Bradley Method" are derived from Dr. Robert Bradley, the author of *Husband-Coached Childbirth*. Like many marks incorporating a proper name, Plaintiff's alleged marks are weak and afford only the most limited protection. *Warren Miller Entm't. Inc.*, 2009 WL 3059121, at *1 n.2; *Marker Int'l*, 844 F.2d at 764. Thus, at most, Plaintiff is entitled to prevent others from using the identical marks as the identifier of the source for childbirth education classes.[1] Importantly, however, Plaintiff is not entitled to prevent others from referring to Dr. Bradley, his book, his principles and methods, or from teaching the same. As in the *Warren Miller* case, Defendants are entitled to explain that their course materials are derived from Dr. Bradley and his teachings, as long as there is no trademark usage. Unfortunately, the Court's Written Order in this case could be construed to reach far more broadly than simply protecting Plaintiff's marks by enjoining *any* reference to the name "Bradley." Plaintiff appears to have

---

[1] For purposes of this motion Defendants are not challenging the Court's preliminary ruling on Plaintiff's rights in the alleged marks. Clearly, Defendants contest whether Plaintiff has any rights in either of the alleged marks and nothing in this brief should be construed as an admission that Plaintiff has any rights.

interpreted it just so broadly. *See* Exhibit A (stating that only current AAHCC teachers may reference "Bradley" or make any inferences similar to the word "Bradley"). Accordingly, the Written Order is not narrowly tailored to preclude the harm at issue. *E. & J. Gallo Winery*, 967 F.2d at 1297. Moreover, because it grants relief to which Plaintiff could never be entitled, Plaintiff's right to that relief cannot be "clear and unequivocal." *Greater Yellowstone Coal.*, 321 F.3d at 1256.

Defendants therefore request that this Court modify the Written Order granting the preliminary injunction to expressly permit Defendants to refer to Dr. Robert Bradley and to describe their childbirth education classes as based on Dr. Bradley's teachings. Specifically, Defendants suggest substituting the language found in paragraph A at page 13 of the Written Order with the following:

> From using BRADLEY or THE BRADLEY METHOD, or any other mark that is confusingly similar to BRADLEY or THE BRADLEY METHOD, including but not limited to, BRADLEY REBORN or BRADLEY BIRTH, to create an association between Plaintiff and Defendants. Provided, however, this injunction does not preclude Defendants from referring to Dr. Bradley or the fact that their curriculum may incorporate his teachings.

Such an amendment to the preliminary injunction adequately protects both Plaintiff's right to prevent Defendants from using its marks in a trademark sense, and Defendants' right to use Dr. Bradley's name in a non-trademark sense. Thus, Defendants request that the Court modify the preliminary injunction in the manner suggested above.

## II. IF THE PRELIMINARY INJUNCTION PROHIBITS REFERENCE TO DR. BRADLEY OR HIS PRINCIPLES, IT VIOLATES THE FIRST AMENDMENT

In addition to granting Plaintiff broad rights to which it is not entitled, if interpreted to preclude reference to Dr. Bradley the Written Order violates Defendants' rights under

the First Amendment to the United States Constitution.  The Supreme Court has recognized the risk of overbroad injunctions, particularly when First Amendment considerations are at stake.  *See, e.g., Madsen v. Women's Health Ctr., Inc.*, 512 U.S. 753, 765 (1994) (an injunction "must burden no more speech than necessary to serve a significant government interest"); *NAACP v. Claiborne Hardware Co.*, 458 U.S. 886, 924 n. 67 (1982) (injunction must be vacated or "modified to restrain only unlawful conduct").  An "order must be tailored as precisely as possible to the exact needs of the case." *Carroll v. President & Comm'rs of Princess Anne*, 393 U.S. 175, 184 (1968).  As with other injunctions, an injunction prohibiting the use of trademarked words must comply with the First Amendment.  *Taubman Co. v. Webfeats*, 319 F.3d 770, 774-75 (6th Cir. 2003).

      The Lanham Act regulates commercial speech.  *See Proctor & Gamble Co. v. Haugen et al.*, 222 F.3d 1262, 1274 (10th Cir. 2000); *Taubman Co. v. Webfeats*, 319 F.3d at 774.  The First Amendment protects commercial speech and it may only be regulated when its content is false or misleading.  *Va. Bd. of Pharmacy v. Va. Citizens Consumer Council, Inc.*, 425 U.S. 748, 765, 771-73 (1976).  Thus, the First Amendment precludes limiting speech related to trademarks unless such use "creates confusion as to the source or sponsorship of the speech or goods in question."  *Coca-Cola Co. v. Purdy*, 382 F.3d 774, 787 (8th Cir. 2004).  In other words, where trademarks are used in a way so as not to confuse the public, such speech is necessarily protected by the First Amendment.  *Taubman Co.*, 319 F.3d at 775.  As the Fourth Circuit noted, "it is important that trademarks not be transformed from rights against unfair competition to

rights to control language." *CPC Int'l, Inc. v. Skippy Inc.*, 214 F.3d 456, 462 (4th Cir. 2000) (internal quotations omitted). Accordingly, courts have upheld injunctions prohibiting the use of trademarked words as valid under the First Amendment only where the plaintiff establishes that the defendant's use of the trademarked words misleads and confuses consumers about the source of the parties' products or services. *See, e.g.*, *E. & J. Gallo Winery*, 967 F.2d at 1297; *Taubman Co.*, 319 F.3d at 774-75; *Purdy*, 382 F.3d at 787. For example, in *Taubman*, the Sixth Circuit held that the First Amendment protected the defendant's use of plaintiff's mark "Taubman" in the domain name "taubmansucks.com" because such use does not create a liklihood of confusion as to the source. 319 F.3d at 778. The court therefore dissolved the injunction of the website. *Id.*

In this case, the Written Order impinges on Defendants' First Amendment rights because it potentially enjoins Defendants from using the word "Bradley" in any manner, even when referring to Dr. Bradley. This Court may only enjoin Defendants from using "The Bradley Method" and "Bradley" in advertisements or other commercial speech in a way that confuses or misleads consumers about the source of childbirth education services. *See Taubman Co.*, 319 F.3d at 775. However, the preliminary injunction in this case could be construed to enjoin a much broader scope of conduct—enjoining Defendants "from using *in any manner* BRADLEY or THE BRADLEY METHOD . . . ". Written Order at 13 (emphasis added). The injunction is impermissibly overbroad under the First Amendment because it could be interpreted to prohibit any use of the word "Bradley," including referring to Dr. Bradley himself. Indeed, Plaintiff now asserts for

-13-

Case No. 1:10-cv-02899-CMA-MEH   Document 68   filed 03/01/11   USDC Colorado
pg 14 of 16

itself and its teachers the exclusive right to make any reference to "Bradley" in relation to childbirth. Exhibit A. The First Amendment protects Defendants' right to use the word "Bradley" to refer to Dr. Robert Bradley the individual because such use does not create a likelihood of confusion regarding the source of Plaintiff's goods. See *Hensley Mfg.*, 579 F.3d at 611. Consequently, Defendants request that this Court amend the preliminary injunction to permit Defendants to refer to Dr. Bradley and his natural childbirth principles.

### III.   THE DELAY OF THE TRIAL NECESSITATES AN INCREASED BOND

Federal Rule of Civil Procedure 65(c) provides in part that no preliminary injunction shall issue "except upon the giving of security by the applicant, in such sum as the court deems proper, for the payment of such costs and damages as may be incurred or suffered by any party who is found to have been wrongfully enjoined." The trial court has "wide discretion" in setting the amount of the preliminary injunction bond. *Continental Oil Co. v. Frontier Refining Co.*, 338 F.2d 780, 782 (10th Cir. 1964).

At the preliminary injunction hearing on December 10, 2010, this Court imposed a $50,000 bond. Transcript (Doc. No. 47) at 177:1-6. Based on the testimony of Defendant Kyle Thomas and the fact that Brio Birth is a start-up company, the Court held that a bond was required in this case in order to compensate Defendants in the event of an improvidently granted injunction. Transcript at 176:23-25; 177:1-6. Accordingly, the bond was set at $50,000. Transcript at 177:2.

At the time of the hearing, the trial was scheduled to start on March 21, 2011, approximately three months after the hearing. Transcript at 181:19-20. Subsequently,

Plaintiff requested a continuance of the trial and received a new trial date of August 2, 2011.  Scheduling Order, at 12 (January 24, 2011).  Consequently, the time between the issuance of the preliminary injunction and the trial has essentially tripled, from three months to almost nine months.  As a result, it necessarily follows that $150,000 would compensate Defendants for an improvidently granted injunction that would be in effect for almost nine months.  Accordingly, Defendants request that this Court increase the amount of bond required in this case from $50,000 to $150,000.

## CONCLUSION

In conclusion, Defendants request that this Court amend the preliminary injunction to clarify that Defendants may use the word "Bradley" to refer to Dr. Bradley the individual for the reasons discussed above.  Further, Defendants request that the bond be increased from $50,000 to $150,000.

Respectfully submitted this 1st day of March, 2011.

>*s/* Gregory S. Tamkin
>Gregory S. Tamkin
>Scott P. Sinor
>Kerry van der Burch
>DORSEY & WHITNEY LLP
>1400 Wewatta Street, Suite 400
>Denver, CO 80202-5549
>Telephone: 303-629-3400
>E-mail: tamkin.gregory@dorsey.com
>E-mail: sinor.scott@dorsey.com
>E-mail: vanderburch.kerry@dorsey.com

Wayne Carroll
CARROLL LAW FIRM, PLC
42104 N. Venture Dr., Suite C-110
Anthem, Arizona 85086
Telephone: 623-551-9366
E-mail: wayne@anthemlawfirm.com

**Attorneys for Defendants / Counterclaimants Kyle Thomas, Naomi Thomas, Ellen Contard and Brio Birth LLC**

CERTIFICATE OF SERVICE (CM/ECF)

I hereby certify that on March 1, 2011, I caused the foregoing document, titled DEFENDANTS' MOTION TO MODIFY THE PRELIMINARY INJUNCTION, to be electronically filed with the Clerk of Court using the CM/ECF system which will send notification of such filing to the e-mail addresses listed below.

jfactor@allen-vellone.com
jschlatter@allen-vellone.com
Jordan D. Factor
Jennifer E. Schlatter
ALLEN & VELLONE, P.C.
1600 Stout Street, Suite 1100
Denver, CO 80202
*Attorneys for Plaintiff and Counterclaim Defendant
American Academy of Husband-Coached Childbirth*

s/ Gregory S. Tamkin
Gregory S. Tamkin
DORSEY & WHITNEY LLP
Attorneys for Defendants and Counterclaimants
1400 Wewatta Street, Suite 400
Denver, CO 80202-5549
Telephone: 303.629.3400
E-mail: tamkin.greg@dorsey.com